J-S54007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMIL BANKS, | |
| Appellant | No. 2262 EDA 2014 |

Appeal from the Judgment of Sentence July 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009614-2012

BEFORE:  BOWES, PANELLA, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 16, 2015**

Jamil Banks appeals from the aggregate judgment of sentence of thirty to sixty years incarceration imposed by the trial court after a jury found him guilty of third-degree murder, conspiracy to commit murder, possession of an instrument of crime ("PIC"), and carrying an unlicensed firearm, and the court found him guilty of persons not to possess a firearm.  We affirm.

The trial court delineated the salient facts as follows.

> On April 12, 2008, at about 12:30 p.m., Joan Hill was working at an insurance office located at 5637 Chew Avenue when she saw a blue Lincoln town car park with the engine running on Woodlawn Avenue. A man, later identified as defendant Salmond, dressed in women's Muslim clothing exited the vehicle. Hill believed the man was going to rob Skyline Restaurant, located around the corner, so she called 9-1-1 and gave the license plate number of the vehicle.

_____
* Former Justice specially assigned to the Superior Court.

At around noon that day, Kerron Denmark and Kenneth Wiggins went to Skyline Restaurant and Wiggins ordered food. Immediately after they left the restaurant with Wiggins carrying his food, a man approached them asking for marijuana. As Denmark and Wiggins were walking down the street someone yelled "don't f'ing move." Denmark heard gunshots and ran away.

On April 12, 2008, at 12:44 p.m., while on routine patrol, Police Officer Christopher Mulderrig was flagged down by a man on the street and told there had been a shooting about two blocks away. When Officer Mulderrig arrived at 5643 Chew Avenue, he observed a male, later identified as Wiggins, lying in the street with a gunshot wound to the chest. Wiggins subsequently died from this gunshot to his chest.

After the murder, Detective Thorsten Lucke recovered surveillance video from Skyline Restaurant. The surveillance video showed Wiggins and Kerron Denmark enter Skyline Restaurant. While the men are inside the restaurant, a vehicle drives by on Chew Avenue and turns left at the corner. Defendant Banks and defendant [Quentin] Salmond, wearing women's Muslim clothing, emerge from the area where the car had turned from Chew Avenue. The defendants walk towards Skyline Restaurant. Defendant Salmond stops in an alley while defendant Banks enters the restaurant. Defendant Banks buys a bottle of soda, leaves the restaurant, and stands with defendant Salmond in the alley, out of sight of the camera. After Wiggins gets his food, he and Denmark leave the restaurant and walk down the street. Defendant Banks follows closely behind Wiggins and Denmark while defendant Salmond follows farther back. The defendants confront Wiggins and Denmark and Wiggins falls to the ground. Quickly thereafter everyone runs away.

Police Officer Joanne Gain of the Crime Scene Unit recovered two .22 caliber fired cartridge casings, a Nike Air Jordan sneaker, and a Mountain Dew bottle from the murder scene. Officer Gain tested the Mountain Dew bottle for finger prints and DNA. According to Police Officer John Cannon, an expert in firearms identification, these two .22 caliber fired cartridge casings were fired from the same unrecovered firearm. The bullet recovered from the decedents body and the fired cartridge casings were not fired from the same firearm.

On April 14, 2008, at about 9:00 p.m., an unlicensed blue Lincoln town car was found on fire in the area of Tenth Street and Chew Avenue. Lieutenant Rodney Wright of the Philadelphia Fire Department determined that the vehicle was burned intentionally.

On April 15, 2008, Charles Hayward gave a statement to police. Hayward explained that in February he had sold the blue Lincoln town car that Hill had called in to 9-1-1 to Bernard Salmond, defendant Salmond's brother. According to Hayward, about a week previously, Wiggins had robbed defendant Salmond after they had been gambling.

On April 17, 2008, Richard Hack, a friend of Wiggins, gave a statement to police. Hack explained that two days before the murder, defendant Salmond, Wiggins, and himself were gambling. Defendant Salmond and Wiggins argued about a gambling debt and then Wiggins choked defendant Salmond and took $1000 from him. For the next couple of nights, defendant Salmond and his friends were in the area looking for Wiggins.

On January 13, 2010, Robert Bluefort told police that about three weeks after the murder, defendant Salmond confessed to him that he shot Wiggins. According to defendant Salmond he had to shoot or be shot. Bernard Salmond told Bluefort that the police had questioned Hayward because the car that was used in the murder was in his name. Bluefort and Bernard Salmond then discussed burning the vehicle. Bernard Salmond stayed with Bluefort for about a month after the murder.

Trial Court Opinion, 10/3/14, at 2-4.

As noted, the jury found Appellant guilty of the aforementioned offenses arising from the shooting death of Mr. Wiggins. On July 28, 2014, the court imposed sentence. Specifically, it sentenced Appellant to twenty to forty years imprisonment for third-degree murder, followed by two consecutive terms of incarceration of five to ten years for conspiracy and

persons not to possess a firearm. In addition, the court imposed concurrent sentences of three and one-half to seven years imprisonment for carrying an unlicensed firearm, and one to two years for PIC. Appellant timely filed a post-sentence motion on July 30, 2014. The court denied that motion and this timely appeal ensued.

The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court penned its Rule 1925(a) decision. The matter is now ready for this Court's review. Appellant presents one issue for our consideration.

> I.     Did the Lower Court err in denying defendant's request for a mistrial when the prosecutor committed prosecutorial misconduct during closing arguments by improperly shifting the burden of proof by suggesting that if the defendant wanted DNA evidence he could have provided it himself?

Appellant's brief at 3.

We consider whether a new trial is mandated due to prosecutorial misconduct based on an abuse of discretion standard. *Commonwealth v. Culver*, 51 A.3d 866, 871 (Pa.Super. 2012). A prosecutor's comments will not be reversible error "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Hawkins*, 701 A.2d 492,

503 (Pa. 1997). Further, "comments by a prosecutor must be examined within the context of defense counsel's conduct." *Id*. It is axiomatic that the Commonwealth bears the burden of proof in a criminal matter and that the defendant is not required to present any evidence. ***Commonwealth v. Wiggins***, 328 A.2d 520 (Pa.Super. 1974).

Here, defense counsel argued during his closing,

> Not one detective, not Detective Williams, not Detective Kelhower, not anybody bothers to get a [DNA] sample from my client to see if it's him. Why? Because it might . . . . show it's not him
> . . . .
> But all you had to do was get a DNA profile from my client and you could have been able to tell if that region excluded him. You could have been able to tell if you had the right guy and they didn't even look.

N.T., 3/11/14, 135-136.

The prosecutor responded with the argument objected to by Appellant below and on appeal. The prosecution maintained,

> But now we have a fingerprint. What are we arguing about now? We are talking about DNA. DNA on a profile that is so weak nobody can match to it, but it can exclude somebody and [defense counsel] has equal access to the person. If he is so confident his client will be excluded, submit your client for review. He didn't do it[.]

*Id*. at 171.

Appellant argues that the prosecutor's argument improperly shifted the burden of proof to him and erroneously suggested that he was required to present evidence to demonstrate his innocence. In his view, the

prosecutor's closing statement infringed on his Fifth Amendment rights. Appellant continues that the trial court's general instruction to the jury that the defendant bore no burden of proving his innocence or presenting evidence was insufficient because it did not specifically address the prosecutor's remark.

The Commonwealth responds that the prosecutor's closing argument did not shift the burden of proof and was a fair response to Appellant's own summation. It contends that once Appellant argued that the absence of DNA evidence was a result of a poor police investigation and that police did not collect DNA because it might show that Appellant was not the culprit, the prosecutor was allowed to respond. In this respect it relies on *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002). Therein, the defendant claimed that the prosecutor improperly shifted the burden of proof during his closing argument by asking why the defendant had not presented three witnesses that defense counsel had suggested she would call during defense counsel's opening statement. The *Paddy* Court found that the prosecutor's remarks were fair response.

Further, the Commonwealth notes that the trial court's instructions that the Commonwealth had the burden of proof and that the defendant was not required to present any evidence or prove anything in his own defense removed any potential prejudice. The Commonwealth also submits that Appellant's position that the trial court's instructions were insufficient

because it did not explicitly address the prosecutor's DNA statement is waived because he did not object to the adequacy of the instruction.

We find that Appellant is entitled to no relief. A jury is presumed to follow the court's instructions. *Commonwealth v. Mollett*, 5 A.3d 291 (Pa.Super. 2010). The court appropriately instructed the jury regarding the Commonwealth's burden of proof and that Appellant was not required to present any evidence. *See Commonwealth v. Johnson*, 838 A.2d 663, 679 (Pa. 2003). The prosecutor's passing reference to the fact that Appellant could have submitted his DNA to his own expert was not so egregious as to form in the minds of the jurors a fixed bias that they could not weigh the evidence fairly. Moreover, the prosecutor did not in any way suggest that Appellant was required to testify, infringing on his right against compelled testimony. While a prosecutor cannot comment on a defendant's failure to testify, it may respond to "questions logically raised by the evidence or lack thereof, or fair responses to the assertions of defense counsel[.]" *Paddy*, *supra* at 317 (internal citations omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/16/2015</u>