J-S23023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC WILLIAM | : | |
| | : | |
| Appellant | : | No. 1685 EDA 2017 |

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008144-2015

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                      **FILED AUGUST 29, 2018**

Appellant Eric William[1] appeals from the judgment of sentence of life imprisonment imposed after a jury found him guilty of first-degree murder,[2] carrying a firearm without a license,[3] and possession of an instrument of crime.[4] Appellant claims that the trial court erred in (1) denying his motion for continuance in order to obtain his preferred counsel; (2) admitting color photographs of a witness whom Appellant attacked while in pretrial custody;

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although Appellant spelled his last name as "Williams" in open court, we retain the original caption of this appeal so that it conforms to the trial court's record.

[2] 18 Pa.C.S. § 2502(a).

[3] 18 Pa.C.S. § 6106.

[4] 18 Pa.C.S. § 907.

and (3) overruling his objection to the prosecutor's conduct during closing arguments. Additionally, Appellant challenges the weight and sufficiency of the evidence. We affirm.

On May 29, 2015, Appellant was charged with murder generally, three firearms offenses, and possessing an instrument of crime for the killing of Bryant Younger (Decedent). On June 19, 2015, W. Fred Harrison, Jr., Esq. entered an appearance as Appellant's private counsel. Attorney Harrison apparently remained counsel of record until September of 2015. The docket then indicated that Appellant "failed to retain counsel." Present counsel, Stephen Thomas O'Hanlon, Esq. (trial counsel) was appointed to represent Appellant and requested continuances from September 15, 2015, to January 12, 2016.

The docket indicates that on February 23, 2016, Appellant rejected a plea offer, and trial was scheduled for October 24, 2016. On October 17, 2016, the trial court ordered a continuance to May 8, 2017, due to an outstanding DNA report and the court's unavailability.

At some time prior to trial, trial counsel apparently informed the court that Appellant wanted private counsel to enter an appearance.[5] **See** N.T., 5/8/17, at 5-6. The trial court denied that request because Appellant's preferred counsel would not be available until the following year. **See id.**

_____

[5] The record does not show when trial counsel discussed a continuance for private counsel to enter an appearance or the contents of trial counsel's communication with the trial court. No formal motion or an order denying such motion was entered into the record.

On May 8, 2017, before jury selection, Appellant requested a continuance to replace trial counsel with private counsel. *Id.* The trial court denied the request for continuance on the record, and Appellant proceeded to trial represented by trial counsel.

The trial court summarized the evidence presented at trial as follows:

[O]n May 10, 2015, at around 12:15 a.m., Police Officer Christopher Thompson and his partner, Police Officer Joseph. Hodge, were on patrol near the 1200 block of Atlantic Street. They heard a "pop" sound, which suggested a muffled gun shot. They drove around and observed a person running from a silver Dodge Avenger. The officers proceeded to the vehicle, where they observed the body of [Decedent], who was bleeding, but still alive. The officers transported [Decedent] to the nearest hospital, where he expired.

Assistant United States Attorney Leo Tsao testified that about a decade earlier, [Decedent] had aided Federal officials in building a case against [Appellant]. [Appellant] ultimately pleaded guilty and went to prison. In consideration for his cooperation, [Decedent] received a reduced sentence.

Police recovered a wallet containing [Appellant's] identification from the vehicle. Police also recovered a Taurus .38 six shot revolver, and two fired cartridge cases from the left rear seat of the vehicle.

Brian Gaeta testified that after hearing two shots, he looked out his window and saw a man standing by a vehicle. He did not see any other people on the scene. At trial and at a police photo array, he identified [Appellant] as having been on the scene. He was unable to identify a suspect at a police lineup. Testifying for the defense, the lineup supervisor, Detective William Urban stated that [Appellant] was in a lineup conducted on August 10, 2015 and that Mr. Gaeta did not pick out [Appellant] or any other person in the lineup.

Dr. Albert Chu, Chief Deputy Medical Examiner, testified that [Decedent] suffered two shots through his brain. The manner of death was homicide.

Latavia Hudson testified that at the time of the offense, she was in a relationship with [Appellant]. A 2011 Dodge Avenger was registered in both of their names. She testified that on May 9, 2015, [Appellant] took the Dodge Avenger, drove away and never returned with the car.

Officer Gregory Welsh, of the Firearms Identification Unit, testified that two bullets recovered from [Decedent]'s brain were fired from the Taurus revolver found in the Dodge Avenger.

Benjamin Sapir Levin, who works in the DNA laboratory of the Police Department's Office of Forensic Science, testified that [Appellant's] DNA was found on the Taurus revolver.

It was stipulated that Police Officer Jason Stark of the Crime Scene Unit recovered [Appellant]'s latent finger prints from the left rear door frame and the right rear door frame of the Dodge Avenger.

It was stipulated that [Appellant] was not licensed to carry a firearm.

Testifying for the defense, Detective Theodore Hagan of the Homicide Unit, stated that three cellular telephones had been recovered from the Dodge Avenger. One telephone was owned by [Appellant]; the second telephone was owned by [Decedent]; and the third telephone was owned by a man named Aquil Sowell.

[Appellant] testified that he had no animus toward [Decedent]. He told the jury that on the evening of May 9, 201[5], [Appellant] and [Decedent] picked up "Ace" (presumably Aquil Sowell) in connection with a drug transaction. As they drove to Atlantic Street, a dispute broke out between Ace and [Decedent]. [Appellant] said that he stopped the car and got out to avoid hearing the argument. [Appellant] claimed that he heard two shots and saw Ace get out of the car and run away. [Appellant] testified that he also ran away.

Trial Ct. Op., 11/27/17, at 7-10.

The Commonwealth called Sylvester Ellis, Decedent's stepfather, in rebuttal. Ellis testified that he was incarcerated in Philadelphia County Prison, where Appellant was in custody for the instant charges. According to Ellis, on November 26, 2015, while they were in county prison, Appellant assaulted

- 4 -

him and made a statement indicating that he killed Decedent. The trial court, over Appellant's objections, permitted the Commonwealth to publish two color photographs of Ellis following the attack. The photographs showed Ellis in a neck brace, with a tube in his mouth, and with swelling and blood on his face.[6]

Toward the end of the Commonwealth's closing argument, the prosecutor asked the jury to "return the only verdict that speaks the truth and have the courage to say, as I do right now." N.T., 5/17/17, at 44. The prosecutor immediately thereafter addressed Appellant, stating: "for what you did . . . on May 10th . . . in 2015 for when you took that .38 caliber revolver, you put if within six inches of [Decedent's] head and you pulled the trigger not once but twice, sir, you are guilty." *Id.* Appellant's counsel objected, noting that the prosecutor, when making those statements, raised his voice, approached within five feet of Appellant, and pointed at Appellant. *Id.* at 76. The court overruled Appellant's objection.

On May 17, 2017, the jury found Appellant guilty of first-degree murder, carrying a firearm without a license, and possession of an instrument of crime. The trial court sentenced Appellant that same day to life imprisonment for first-degree murder and concurrent terms of imprisonment for the remaining offenses.[7]

---

[6] The Commonwealth did not attempt to admit or publish another photograph, which depicted a wound to Decedent's stepfather's scrotum.

[7] Specifically, the trial court imposed concurrent sentences of three-and-one-half to seven years for carrying a firearm without a license and two-and-one-half to five years for possessing an instrument of crime.

Appellant challenged the weight of the evidence in a timely post-sentence motion. The trial court denied the motion on May 25, 2017.

Appellant timely filed a notice of appeal, and after obtaining an extension of time, complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion.

Appellant presents the following questions for review:

1. Was Appellant denied his Sixth Amendment right to counsel of his choice because the trial court denied Appellant a continuance so that Appellant's counsel of choice could be prepared and ready to represent Appellant at trial?

2. Did the trial court abuse its discretion by allowing inflammatory color photographs of a witness that was injured by Appellant while Appellant was in pretrial custody?

3. Did the trial court abuse its discretion by allowing the prosecutor to engage in misconduct when the prosecutor was allowed to stand a few feet from Appellant during closing argument and when the prosecutor repeatedly pointed and shouted directly at Appellant?

4. Is Appellant's conviction for first-degree murder against the weight of the evidence because, *inter alia*, there was no eyewitness testimony, because people knew that Appellant was with Decedent so there is a lack of prior planning, and the revenge motive is questionable because Appellant and Decedent had previously socialized without incident?

5. Was there insufficient evidence to convict for first-degree murder because there was no eyewitness testimony, because people knew that Appellant was with Decedent so there is a lack of prior planning, and the revenge motive is questionable because Appellant and Decedent had previously socialized without incident?

Appellant's Brief at 4-5.

Appellant first claims that the trial court erred in denying his request for a continuance to retain private counsel. By way of background, the record contains the following discussion on the day of jury selection.

[Appellant]: A while ago, I dismissed O'Hanlon [trial counsel] as my lawyer.

THE COURT: Well, is he someone that you retained?

[Appellant]: Yes, Mr. --

[Trial counsel]: No. Am I someone that you retained?

[Appellant]: Mr. Harris.

THE COURT: Mr. O'Hanlon, was he retained by you?

[Appellant]: He was court-appointed.

THE COURT: Okay.

[Appellant]: I wanted a private counsel.

THE COURT: Well, have you -- how long ago did you make that decision?

[Appellant]: I was told by Mr. O'Hanlon that you denied Fred Harrison, Jr. as being my attorney because it was -- the case was going on too long.

THE COURT: That's correct. Now my memory is refreshed, and that request was made much too close to the trial date, and Mr. Harrison indicated that he could not be ready. His own schedule was such that he was tied up and could not try this case if he remained as counsel, if he became your counsel, until next year, sometime in February or March of next year. So I denied the request. If he were ready, I would have granted it.

[Appellant]: The only issue I'm having right now is that me and Mr. O'Hanlon is not seeing eye-to-eye. This is my life. This ain't a 5-to-10 or a 10-to-20 where I'm going home. This is if I lose, it's over.

THE COURT: I realize what the charges are, yes.

[Appellant]: If we continue with him as my lawyer, it's going to be ineffective counsel because I am not communicating with him no more about my case. I don't want nothing to do with it. I am not communicating with him.

THE COURT: That's a decision you have to make, but it will be on you. My advice to you is you communicate with Mr. O'Hanlon and you assist in the trial of your case. But if your perspective is that you refuse to do that, it's on you. That's not ineffective assistance of counsel, that's ineffective cooperation with counsel. It's a difference.

[Appellant]: He is just -- like I understand that this case has been drawn along. I have been arrested since May the 28th, 2015. I understand that it's been over two years. But I really need Mister -- I really need private counsel. Like, I really need it. Like, if I have to wait until next year -- I am the one that's going to be incarcerated. Like, I understand that.

THE COURT: I understand. Mr. O'Hanlon, are you prepared to try this case?

MR. O'HANLON: Yes, I am.

THE COURT: All right. Then this case is going to go forward and we're going to begin jury selection today.

N.T., 5/8/17, at 5-8.

The trial court, in its Rule 1925(a) opinion, explained its decision to deny the requested continuance as follows:

The docket entries show that [trial counsel] entered his appearance on September 9, 2015. The last listing prior to trial was October 26, 2016, at which time the Commonwealth's [plea] offer was rejected and the case was continued until [the trial date of] May 8, 2017. [Appellant] had sufficient time to retain a lawyer who would have been available for the trial date. This court cannot allow a defendant to upset the court calendars and delay the administration of justice. [Appellant] failed to exercise his right to choose a lawyer. . . . . Therefore, the request to substitute counsel on the day of trial was properly denied.

Trial Ct. Op. at 4.

Appellant argues that the trial court violated his right to his choice of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Appellant's Brief at 10-11 (citation omitted). Appellant asserts that the trial court failed to accord "sufficient deference to Appellant's constitutional right to counsel of his choice" and overemphasized the "efficiency of court calendaring[.]" *Id.* at 11.

The principles governing our review of Appellant's claim are set forth in ***Commonwealth v. Prysock***, 972 A.2d 539 (Pa. Super. 2009):

> [A] trial court's decision to deny a request for a continuance
>
>> will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error [in] judgment. Rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. . . ."
>
> With respect to the right to counsel, The Supreme Court of Pennsylvania has stated:
>
>> [t]he right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. In addition to guaranteeing representation of the indigent, these constitutional rights entitle an accused "to choose at his own cost and expense any lawyer he may desire." The right to "counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney."
>
>> We have held, however, that the constitutional right to counsel of one's choice is not absolute. Rather, "the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice."

> Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably "clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." At the same time, however, we have explained that "'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'"

*Prysock*, 972 A.2d at 541-42 (citations omitted).

In *Prysock*, the defendant was charged in May 2007. *Id.* at 540. Trial was scheduled for August 2007, even though counsel was not appointed. *Id.* The trial court appointed counsel and continued the trial date to November 2007. *Id.* Immediately before jury selection on November 1, 2007, appointed counsel informed the court that the defendant was dissatisfied with counsel's representation and wished to retain private counsel. *Id.* The trial court denied the request for a continuance and directed jury selection to begin. *Id.* The defendant continued to express his dissatisfaction with appointed counsel following the first day of jury selection, and he again requested a continuance to obtain private counsel. *Id.*

The next day, private counsel attempted to enter an appearance. *Id.* However, private counsel asserted that he was not prepared for trial and requested a continuance of jury selection and trial. *Id.* The trial court denied private counsel's request for a continuance, and the defendant proceeded

through the remainder of jury selection and trial with appointed counsel.[8] *Id.* at 541.

Following his conviction, the defendant appealed to this Court asserting that the trial court erred in denying his requests for continuances to obtain private representation. The *Prysock* Court agreed and remanded for a new trial.

In reversing the trial court, the *Prysock* Court reviewed several factors including (1) the lack of "an 'extensive inquiry' into the underlying defendant's dissatisfaction with current counsel"; (2) whether the defendant's dissatisfaction with counsel amounted to "'irreconcilable difference'"; (3) "the number of prior continuances"; (4) "the timing of the motion" for continuance; (5) "whether private counsel had actually been retained"; and (6) the readiness of private counsel to proceed in a reasonable amount of time. *Id.* at 543. Following its review, the *Prysock* Court concluded that the trial court failed to engage in an appropriate balancing of the defendant's constitutional right to retain counsel against the Commonwealth's interest in the swift administration of justice. *Id.* at 544.

Instantly, Appellant stated that he was not comfortable with trial counsel, that they were not "seeing eye-to-eye," and that he wished to

---

[8] The Court further noted that the defendant's "difficulties with appointed counsel pervaded every aspect of the trial, as [the defendant] objected to counsel's handling of jury selection, his handling of the suppression hearing, his questioning of witnesses at trial, and his refusal to call requested character witnesses." *Prysock*, 972 A.2d at 545.

proceed with private counsel. N.T., 5/8/17, at 7. However, Appellant did not articulate any grounds to find an irreconcilable difference with trial counsel.

The record also shows there were numerous continuances prior to trial, and nearly two years had passed since Appellant was charged. Although it is unclear when Appellant first requested that private counsel replace trial counsel, there is no indication that Appellant did more than express an interest in having private counsel enter into the case. Significantly, the trial court indicated that private counsel would not be ready to proceed until February of the next year, approximately least nine months from the scheduled start of trial.

Based on the totality of the foregoing circumstances, we conclude that the trial court assessed the appropriate factors when considering Appellant's requests for a continuance and private counsel. *See Prysock*, 972 A.2d at 543-44. The trial court's balancing of the swift administration of justice against Appellant's right to choice of counsel did not evince a myopic insistence of expeditiousness over a justified request for further delays. *See id.* at 542, 543. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's request for a continuance to retain private counsel. *See id.* at 541.

Appellant's second claim assails the trial court's rulings permitting the Commonwealth to publish photographs of the injuries Appellant inflicted on Decedent's stepfather, Sylvester Ellis. Appellant contends that trial court erred in admitting inflammatory color photographs that were cumulative of

- 12 -

Ellis' rebuttal testimony. Appellant's Brief at 13. He further contends that the trial court should have excluded the photographs of the injuries because they "showed that Appellant had a propensity for inflicting serious injury." *Id.*

Our standards of review are well settled.

> Where a photograph "possesses gruesome or inflammatory qualities likely to inflame the passions of the viewer" a trial court must not merely exclude them based on those qualities, but must determine whether their "essential evidentiary value . . . clearly outweighs the likelihood of inflaming the minds and passions of the jurors." A trial court's determination in that regard must be affirmed unless the trial court has abused its discretion.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1069 (Pa. 2013) (citations omitted). Additionally, the presentation of testimony as to a person's injuries "does not render photographs *per se* inadmissible." *Commonwealth v. Johnson*, 42 A.3d 1017, 1034 (Pa. 2012) (citations omitted).

Instantly, the Commonwealth introduced Ellis' testimony that Appellant attacked him and stated he was going to kill Ellis as he did Decedent as rebuttal evidence. Specifically, the Commonwealth introduced the evidence to counter Appellant's testimony that he harbored no ill-will against Decedent and that a third individual in the car shot the Decedent. N.T., 5/17/17, at 38-40. Additionally, the Commonwealth asserted that Appellant attempted to "eliminate a witness" to whom Appellant made an admission. N.T., 5/8/17, at 117. The Commonwealth published the photographs to the jury during Ellis' account of the attack and the injuries he suffered.

The photographs illustrated the extent of the injuries Appellant inflicted, and the mere fact that Ellis testified to the attack does not obviate the admissibility of the pictures. *See Johnson*, 42 A.3d at 1034. While unpleasant, they were not unduly gruesome or inflammatory. Thus, we discern no basis to disturb the trial court's ruling that the publication of the photographs to establish the extent of Ellis' injuries clearly outweighed the possibility of prejudice. *See Lyons*, 79 A.3d at 1069.

Appellant, in his third claim, challenges the Commonwealth's conduct at the end of its closing argument, when the prosecutor "stood within five feet of Appellant and repeatedly pointed and shouted at Appellant." Appellant's Brief at 15. Appellant asserts that "such zealous and personal condemnation" affixed prejudice in the minds of the jury. *Id.*

We review a claim of prosecutorial misconduct to determine whether the trial court abused its discretion in considering the nature of the misconduct and the degree of any resulting prejudice. *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009). As to the alleged misconduct, "[i]t is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Id.* at 1020 (citation omitted). Prosecutorial misconduct will not be found based on oratorical flair or if the conduct at issue did not prejudice the jury by impeding their ability to weigh the evidence objectively and render a true verdict. *Id.*

In **Commonwealth v. Culver**, 51 A.3d 866 (Pa. Super. 2012), this Court affirmed a trial court's ruling that the defendant was entitled to a new trial due to the cumulative effect of several instances of prosecutorial misconduct. **Culver**, 51 A.3d at 872, 882. Specifically, in **Culver**, the trial court found that the prosecutor (1) despite the court's admonitions, continued to intimidate the defendant by invading the defendant's and his counsel's "personal space" by pointing his finger in their faces and yelling; (2) personally opined on the credibility of the defendant; and (3) referred to evidence that was not in the record. **Id.** at 872. Discussing the prosecutor's repeated conduct, this Court noted:

> At best, such behaviors demonstrate a lack of professionalism in the courtroom. At worst, they could be interpreted as intentional conduct intended to inflame the passions of the jury or to instigate a reaction from the defendant or his counsel. What is clear is that such behavior has no part in the rational, logical, and contemplative evaluation of the evidence that should occur during a criminal trial.
>
> The deprivation of an individual's liberty should never turn upon the theatrical presentation of arguments or evidence, the volume and tone of an advocate's voice, or due to physical acts of intimidation. That such behavior occurred in front of a jury only serves to increase its potential prejudicial effect. While we might presume that a trial judge could resist the prejudicial effect of such theatrics, especially where the trial judge had prior experience with a particularly dramatic attorney, we cannot assume the same when a case is tried before a jury. A jury might well become distracted from their task by the theatrics of an over-zealous prosecutor. We, therefore, have no reservation in determining that the trial court did not abuse its discretion in determining that these events contributed greatly to denying . . . a fair and impartial trial.

**Id.** at 875-76.

- 15 -

Instantly, Appellant's suggestion that the prosecutor yelled at Appellant is not supported in the record. *See* N.T. 5/17/17, at 76 (indicating that trial counsel objected based, in part, on the prosecutor's use of a "slightly raised" voice). Moreover, the prosecutor's "do as I do now" argument, which was accompanied by the prosecutor pointing a finger within five feet of Appellant, did not personally opine on the credibility of any witness or serve to intimidate the defense. The trial court was in the best position to observe prosecutor's conduct and tone and concluded that the prosecutor merely used a "raised voice" near Appellant and "did nothing to prejudice the jury or impede the rendering of a true verdict." Trial Ct. Op. at 6-7.

Under these circumstances, we conclude that the prosecutor's limited theatrics did not exceed the bounds of oratorical flair. *See Judy*, 978 A.2d at 1019; *cf. Culver*, 51 A.3d at 875-76. Thus, we have no basis to disturb the trial court's conclusion Appellant's claim did not establish prosecutorial misconduct.

Appellant, in his final two claims, raises challenges to the weight and sufficiency of the evidence. Appellant's Brief at 19, 21. In both claims, Appellant contends that the case against him was circumstantial as no eyewitness testified that Appellant shot Decedent. He further argues that the trial evidence supported his testimony that a third person in this car, Ace, killed Decedent. *Id.* at 19, 21. Moreover, Appellant suggests that he could not have planned, intended, or actually shot Decedent when Decedent's family was aware that Decedent was with Appellant when he was killed, the killing

occurred inside a vehicle associated with Appellant, and Appellant testified that he harbored no ill-will against Decedent. *Id.* at 19, 21.

As noted in **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000), challenges to the sufficiency of the evidence and weight of the evidence are distinct. *See Widmer*, 744 A.2d at 751.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

> * * *

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has

had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Id.* at 751-53 (citations omitted).

As to Appellant's weight of the evidence claim, the trial court noted that there was ample circumstantial evidence establishing Appellant killed Decedent. The court specifically referenced the undisputed facts establishing that Appellant was at the scene of the murder, that Appellant's DNA was on the murder weapon, that Decedent had cooperated with federal authorities against Appellant, and that Appellant assaulted Ellis in prison. Trial Ct. Op. at 11.

We add that the jury was entitled to reject Appellant's assertions that a third person in the car shot Decedent, that Appellant harbored no ill-will against Decedent, and that Appellant would not have shot Decedent when Decedent's family was aware that Decedent was with Appellant at the time of the shooting. Thus, we discern no basis to disturb the trial court's conclusion that the interests of justice did not require a new trial. *See Widmer*, 744 A.2d at 753.

As to Appellant's sufficiency claim, a review of Appellant's arguments reveals that Appellant essentially rehashes his weight of the evidence claim. *See* Appellant's Brief at 21. In any event, it is well-settled that

To sustain a conviction for murder of the first-degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the

killing; and (3) the accused acted with specific intent to kill. "Specific intent may be inferred from the use of a deadly weapon on a vital part of the victim's body." Also, . . . the period of reflection required for premeditation to establish the specific intent to kill "may be very brief; in fact the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death."

*Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009) (citations omitted).

Instantly, the record reveals that Appellant was present at the time of the shooting and his DNA was on the murder weapon. A witness testified that he only saw one person, Appellant, fleeing the scene of the murder. The victim was shot twice in the head. Thus, there was ample evidence from which the jury could have concluded that Appellant killed the decedent and that it was his conscious purpose to bring about death. *See id.* Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/18

- 19 -