J-S09038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RENE FIGUEROA | : | |
| | : | |
| Appellant | : | No. 1325 EDA 2021 |

Appeal from the PCRA Order Entered June 1, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0000620-2013

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 12, 2022**

Appellant Rene Figueroa appeals from the Order entered in the Court of Common Pleas of Northampton County on June 1, 2021, denying his Amended Petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  Following a careful review, we affirm.

On direct appeal, a prior panel of this Court set forth the relevant facts and procedural history herein, as recited by the trial court, as follows:

> On the night of December 1, 2012, [appellant] and [Javier Rivera-Alvarado ("Rivera-Alvarado") ] were at the Puerto Rican Beneficial Society Club ("Puerto Rican Club"), a social club located on East Third Street in Bethlehem, Northampton County, Pennsylvania. [Appellant] was at the Puerto Rican Club to watch a boxing match, as were the following individuals: Yolanda Morales, [Rivera-Alvarado], Orialis and Angel Figueroa ("Orialis" and "Angel"),[Footnote 7] and Luis Rivera

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

("Rivera"). Orialis, Angel, and Rivera were the alleged victims of [appellant] and [Rivera-Alvarado] and are members of the same family. Ms. Morales was a friend of the alleged victims' family. On the night in question, a shootout between [appellant] and Orialis occurred at approximately 2:30 a.m. on the street outside the Puerto Rican Club, resulting in the death of Ms. Morales and gunshot wounds to [appellant], [Rivera-Alvarado], Orialis, Angel, and Rivera. After the shootout, the injured individuals were transported to the emergency trauma center at St. Luke's Hospital. There, Detective Martinez conducted interviews with a number of the involved individuals.

[Footnote 7] Orialis Figueroa and Angel Figueroa are brothers with no relation to [appellant]. ...

Trial court opinion, 5/26/15 at 4-5.

The trial court also provided the following procedural history:

[Appellant] has appealed to the Superior Court from the judgment of sentence imposed on January 23, 2015. Following a jury trial held from September 29, 2014, to October 31, 2014, [appellant] was convicted of involuntary manslaughter as a misdemeanor of the first degree,[Footnote 1] aggravated assault as a felony of the first degree,[Footnote 2] firearms not to be carried without a license as a felony of the third degree,[Footnote 3] and receiving stolen property as a felony of the second degree.[Footnote 4]

[Footnote 1] 18 Pa.C.S.A. § 2504.

[Footnote 2] [18 Pa.C.S.A.] § 2702(a)(1).

[Footnote 3] [18 Pa.C.S.A.] § 6106(a)(1).

[Footnote 4] [18 Pa.C.S.A.] §§ 3903(a)(2), 3925.

On January 23, 2015, [appellant] was sentenced to thirty to sixty months in state prison for involuntary manslaughter, a consecutive period of 108 to 216

- 2 -

months in state prison for aggravated assault, a consecutive period of forty-two to eighty-four months in state prison for firearms not to be carried without a license, and a concurrent period of thirty to sixty months in state prison for receiving stolen property. In the aggregate, [appellant] was sentenced to 180 to 360 months in state prison, or fifteen to thirty years.

On February 9, 2015, [appellant] filed a Notice of Appeal.[Footnote 5] However, on September 16, 2015, the Superior Court, at docket number 421 EDA 2015, dismissed [appellant's] appeal because his attorney failed to file an appellate brief. Subsequently, [appellant] sought the restoration of his appellate rights by way of a petition for post-conviction collateral relief, which the [trial] court granted in an Order filed on January 13, 2017. The instant appeal followed.

[Footnote 5] [Appellant] did not file an optional post-sentence motion pursuant to Pennsylvania Rule of Criminal Procedure 720.

On March 30, 2017, [appellant], through new counsel, filed a "Concise Statement of Errors Complained of on Appeal Pursuant to Rule of Appellate Procedure 1925(b)" ("Concise Statement")[.]

Trial court opinion, 4/25/17 at 1-2.

**Commonwealth v. Figueroa**, No. 1355 EDA 2017, unpublished memorandum at 1–2 (Pa.Super. filed August 3, 2018) (unpublished memorandum) (brackets and parentheses in original).

In affirming Appellant's judgment of sentence on August 3, 2018, this Court held, *inter alia*, that Appellant had not adequately preserved for

appellate review his allegations of a **Bruton**[2] violation and of trial court error for failing to declare a mistrial due to prosecutorial misconduct during the closing argument. **See Id**. at 4-5.

On August 7, 2018, Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, and the Supreme Court denied the same on January 22, 2019. **See Commonwealth v. Figueroa,** 650 Pa. 547, 200 A.3d 943 (2019) (Table).

On July 29, 2019, Appellant filed a PCRA petition *pro se*, and he filed a supplemental, *pro se* PCRA petition on September 19, 2019. On August 1, 2019, counsel was appointed and granted leave to file an amended PCRA petition. Counsel filed Appellant's Amended Petition for Post Conviction Collateral Relief on January 9, 2020, wherein he raised claims of ineffective assistance of prior counsel. Following an evidentiary hearing held on September 18, 2020, the PCRA court denied Appellant's PCRA petition in an Order and Opinion of the Court entered on June 1, 2021.

Appellant filed a timely notice of appeal on June 28, 2021, and his concise statement of errors complained of on appeal on July 26, 2021. The

---

[2] **Bruton v. United States**, 391 U.S. 123 (1968). In **Bruton**, the United States Supreme Court held a confession from a non-testifying co-defendant that directly incriminates a defendant in a joint trial is of such a powerfully incriminating nature that an instruction to the jury limiting its consideration of the confession is insufficient to cure prejudice to defendant from the confession's admission at trial. **Id**. at 135-37.

PCRA court did not file a subsequent Opinion pursuant to Pa.R.A.P 1925(a). Instead, on July 27, 2021, the court filed its "Pennsylvania Rule of Appellate Procedure 1925(a) Statement" wherein the court indicated "that the place in the record where the reasons in support of the Order appealed from may be found is the Opinion of the Court filed on June 1, 2021."

In his appellate brief Appellant presents the following Statement of Questions Involved:

> I.  DID THE TRIAL COURT ERR BY FINDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO MOVE FOR A MISTRIAL FOLLOWING A PATENT BRUTON VIOLATION?
>
> II. DID THE TRIAL COURT ERR BY FINDING THAT APPELLANT [SIC] COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO PRESERVE ON APPEAL THE DENIAL OF A MISTRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT IN THE CLOSING ARGUMENT.

Brief of the Appellant at 4.

When reviewing the denial of a PCRA petition, both the Pennsylvania Supreme Court and this Court "determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020) (citation omitted).  Our standard of review of the PCRA court's legal conclusions is *de novo*, while our scope of review is limited to the findings of the court and the evidence of record. **Id.**

Counsel is presumed effective; therefore, a petitioner must plead and prove the following to succeed on a claim of ineffective assistance of counsel:

(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate [the petitioner's] interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003) (citations omitted). An ineffectiveness claim will be successful only where the petitioner satisfies each prong of the aforementioned test. *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

Appellant first argues that trial counsel was ineffective for failing to move for a mistrial following a *Bruton* violation that occurred during the direct testimony of Detective Fabian Martinez at which time he uttered Appellant's full name. Detective Martinez testified, *inter alia*, regarding the redacted portion of Appellant's co-defendant's statement. Specifically, the detective testified that co-defendant told him "on his way out, one of the bouncers has come out of a back room and show Rene Figueroa…." N.T., 10/23/14, at 140.

Appellant posits that as a result of this statement, "the prosecutor was responsible for assisting the jury into believing the bouncer showed a gun to [Appellant] [and that] [t]his was a patent violation of *Bruton*." Brief of the Appellant at 21. Appellant further reasons that this testimony aided the Commonwealth in establishing intent on the part of Appellant pertaining to the murder and injuries sustained by others present. "Trial counsel's theory

- 6 -

of the case is that [Appellant] had a gun, but not the alleged bouncer's gun, when he was protecting the life of his friend. . . ." *Id*. at 25. Appellant concludes that trial counsel's failure to properly motion for a mistrial at that time was prejudicial to Appellant. *Id*. at 26-27.

After briefly summarizing the evidence of the events leading to Appellant's arrest, the PCRA court, the Honorable Anthony S. Beltrami, concluded that Appellant's ineffectiveness claim pertaining to the ***Bruton*** violation was meritless, and in doing so meticulously detailed its analysis as follows:

Before Detective Martinez was to be questioned regarding the contents of Co-Defendant's statement, the following discussion was held:

[TRIAL COUNSEL]: Judge, may we see you?

THE COURT: Sure.

(The following discussion was held at sidebar.)

[TRIAL COUNSEL]: Judge, we talked about this a long time ago, that if they were going to use this it would be a redacted version.

THE COURT: I assumed that you saw it.

[TRIAL COUNSEL]: I never saw that redacted version. I mean we talked about it.

[PROSECUTOR]: Yes, we did.

THE COURT: I just assumed you talked this out.

[PROSECUTOR]: Yes. [Defendant] -- [Co-Defendant] refers to [Defendant]. What he's going to say is that his name was mentioned. He is going to just - he's going to say a person with the group, and I told [Trial Counsel].

- 7 -

THE COURT: His statement can only be used against [co-Defendant]; am I right?

[TRIAL COUNSEL]: Yes.

[PROSECUTOR]: That's correct.

THE COURT: All right.

[TRIAL COUNSEL]: Okay, but, you're going to read the redacted version?

[PROSECUTOR]: Yes.

[TRIAL COUNSEL]: Will you give them an instruction?

(End of discussion at sidebar.)

(*See* N.T., 10/23/2014, at 137:23-139:25.) At the conclusion of the sidebar discussion, the court instructed the jury as follows: "[L]et me just tell [you] that any statement that [Co-Defendant] made can only be used against [Co-Defendant]. So with regard to any statements that the detective relays to you that were made by [Co-Defendant], you cannot consider them against [Defendant]." (*Id*. at 139:4-11.)

Detective Martinez then proceeded to testify as to the contents of Co-Defendant's statement, reaching as far as the sixth paragraph of the statement, as reproduced above, without issue or objection. (*Id*. at 139:14-140:23.) When Detective Martinez got to that portion of Co-Defendant's statement that suggested that [Defendant] was handed a gun by a bouncer shortly before the shootout, the following exchange occurred:

[PROSECUTOR:] Did he say anything occurred as he was leaving the club with his wife?

[DET. MARTINEZ:] Well, after he made a statement, he was again advised that we were trying to figure out what happened, we needed to know everything he saw. He did state that, on his way out, one of the bouncers had come out of a back room and show *Rene Figueroa* –

[PROSECUTOR:] That wasn't -- that wasn't –

[DET. MARTINEZ:] I apologize.

[THE COURT:] Disregard that statement, ladies and gentlemen.

[TRIAL COUNSEL:] Judge, I want -- I reserve.

[THE COURT:] Go ahead.

[PROSECUTOR:] Let's back up. *You said a bouncer brought a gun out of the back room*, right?

[THE COURT]: Well, at this point, Mr. Houck, I prefer that you not question about this area.[12]

[PROSECUTOR:] That's all right.

(*Id*. at 140:24-141:21 (emphasis added).) Detective Martinez then testified as to the remaining "non-gun" portion of Co-Defendant's statement, paragraphs eight and nine as reproduced above, thereby entering those portions of Co-Defendant's statement into evidence.[13] (*Id*. at 141:22-142:15.)

Defendant asserts that a "fatal" *Bruton* violation occurred during Detective Martinez's testimony and that Trial Counsel was ineffective for failing to move for mistrial as a result of that alleged violation. (Def.'s Br. 3.) Thus, the court must first determine whether there is arguable merit to the claim that Trial Counsel should have moved for a mistrial.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually

- 9 -

occurred, and if so, assess the degree of any resulting prejudice.

*Commonwealth v. Nevels*, 203 A.3d 229, 244 (Pa. Super. 2019), *appeal granted in part*, 216 A.3d 1042 (Pa. 2019), and *aff'd*, 235 A.3d 1101 (Pa. 2020) (quoting *Commonwealth v. Baldwin*, 158 A.3d 1287, 1293 (Pa.Super.2017)).

As noted above, in an Opinion and Order filed on February 17, 2014, the court denied Co-Defendant's motion to suppress the statement he gave to Detective Martinez. Accordingly, leading up to Detective Martinez's testimony, Co-Defendant's statement was admissible, as a matter of law, with the only caveat being compliance with *Bruton* and its progeny, as the statement was incriminating to Defendant, on its face.

In *Bruton*, the United States Supreme Court held that the admission into evidence of an extrajudicial statement of confession by non-testifying co-defendant A inculpating codefendant B in the crime, violated co-defendant B's right of cross-examination under the Confrontation Clause of the Sixth Amendment. In other words, as the High Court stated subsequently in *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987), "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." In reaching this holding, the High Court reasoned that, even if the jurors were instructed to the contrary, there remained a substantial risk that they would look to co-defendant A's incriminating extrajudicial statement in assessing co-defendant B's guilt. *Bruton*, *supra* at 126, 128-29, 88 S. Ct. 1620; *see id*. at 135, 88 S. Ct. 1620 ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."); *see id*. at 137, 88 S. Ct. 1620 ("[I]n the context of a joint trial we cannot accept limiting instructions as an adequate substitute for [a co-defendant's] constitutional right of cross-examination."). Thus, in *Bruton*, the High Court created a narrow exception to the general legal principle that the jury is presumed to follow the court's instructions. *Id*. at

135-37, 88 S. Ct. 1620; *Richardson*, *supra* at 206-07, 107 S. Ct. 1702.

In *Richardson*, *supra* at 202,107 S. Ct. 1702 the High Court considered whether *Bruton's* holding applies when co-defendant A's confession was redacted to omit any reference to co-defendant B, but co-defendant B was "nonetheless linked to the confession by evidence properly admitted against him at trial." In answering this question in the negative, the *Richardson* Court distinguished between a confession that was incriminating *on its face* to codefendant B (which was clearly subject to *Bruton's* rule) and a confession that was incriminating to co-defendant B only by inference from evidence subsequently introduced at trial. The *Richardson* Court held that the latter was not subject to *Bruton's* rule. *Id*. at 208, 107 S. Ct. 1702. Thus, the High Court in *Richardson* limited *Bruton's* holding to statements of confession by co-defendant A that were facially incriminating to co-defendant B, exempting from *Bruton's* control those statements that were incriminating to co-defendant B only after connection with or linkage to other evidence admitted at trial. *Richardson*, *supra* at 208-09, 107 S. Ct. 1702; *see Gray v. Maryland*, 523 U.S. 185, 191, 195, 118 S. Ct. 1151, 140 L. Ed.2d 294 (1998); *see also Commonwealth v. Cannon*, 610 Pa. 494, 22 A.3d 210, 2I9 (2011) (applying *Richardson*); *Commonwealth v. Brown*, 592 Pa. 376, 925 A.2d 147, 157 (2007) (noting this Court's approval of the redaction practices permitted under *Richardson*).

*Commonwealth v. Roney*, 79 A.3d 595, 623-24 (Pa. 2013).

When Detective Martinez used Defendant's name while testifying as to Co-Defendant's statement, *Bruton* was clearly violated. However, Defendant's first issue does not have arguable merit for the following reasons. Immediately after the *Bruton* violation occurred and before any additional testimony was offered, the court ordered the jury to "[d]isregard that statement," by which it meant that Detective Martinez's testimony that Co-Defendant "did state that, on his way out, one of the bouncers had come out of a back room and [had] show[n] Rene Figueroa—" was stricken from the record and was not to be part of the jury's consideration of the case. (N.T., 10/23/2014, at 141:5-7.) The jury had previously been instructed by the court as

- 11 -

follows: "Sometimes I may order evidence stricken from the record after you hear it [and] [w]henever I . . . order evidence stricken from the record, *you must completely disregard that evidence when deciding the case*." (N.T. , 10/8/2014, at 13:25-14:5 (emphasis added).) "[A] jury is presumed to follow a trial court's instructions." *Commonwealth v. Reid*, 99 A.3d 470, 501 (Pa. 2014). Moreover, right after the *Bruton* violation, the court's striking of the testimony, and the court's cautionary instruction, the prosecutor attempted to continue the questioning about Co-Defendant's statement about the gun being shown to [Appellant] by asking the question, "Let's back up, you said a bouncer brought a gun out of the back room, right?" The court once again immediately stepped in and precluded the line of questioning, stating, "I prefer that you not question about this area." (*Id*. at 141:16-20.) Thus, it is clear that the complained-of testimony was not part of the evidentiary record that the jury could consider in reaching its verdict. For this reason, the alleged prejudicial event could not reasonably be said to have deprived [Appellant] of a fair and impartial trial. Thus, there is no arguable merit to [Appellant's] contention that Trial Counsel was ineffective for failing to request a mistrial, and Defendant suffered no prejudice as a result of Trial Counsel's failure to move for a mistrial during Detective Martinez's testimony.

Even assuming, for the sake of argument, that this claim has arguable merit or that Defendant suffered prejudice, Trial Counsel had a reasonable basis for not making a motion for a mistrial. Trial Counsel testified as follows regarding his decision not to move for a mistrial at this point in the trial:

Well, the strategy moving forward was as follows. Number one, the [c]ourt prior to [D]etective Martinez's testimony clearly indicated that the testimony could only be used against [Co-Defendant] and not [Defendant]. So that's the start of the testimony, and we presume that the jury would follow that instruction, number one. Number two, when the minor *Bruton* issue came up on page 141 where he mentioned [Defendant], the [c]ourt then immediately indicated to the jury to disregard that statement, and again I presume that the jury did that. And again, the statement as I read it here, recollecting back, all it says is that one of the bouncers came out of the back room and showed [Defendant] -- that's all it says. It doesn't say anything more than that. And what that exactly means is not really clear, and it wasn't that

- 12 -

devastating or anything like that in the case, in the grand scheme of this case, and the judge had cautioned them prior to the testimony and told the jury to disregard that issue, and I didn't think it was something that was that important to move forward on, number one, because it's a minor issue but, probably more important at that point in the trial, I really didn't want a mistrial in reality. That was such a minor issue in the grand scheme of this case, and I believed that the case had gone very, very well for myself and [Defendant], mostly [Defendant], and we were in a good position to end the murder portion of the case. If a mistrial was, in fact, granted, it would have started the whole situation over and put us in a position where I didn't feel it was advantageous to [Defendant]'s best interests because I thought, this is going very well, and sometimes you are forced into a mistrial because the mistake is so devastating that it's going to create such undue prejudice, but that was certainly not this particular minor *Bruton* situation with two cautionary jury instructions. So maybe technically there was a basis for a mistrial request, but I didn't think it was that significant in the grand scheme of things. And also, I didn't really want a mistrial. It's the old be careful what you wish for, because I don't think it would be in [Defendant]'s interests. And my assessment at that time is borne out by the verdict in the case, you know, that we were in good shape, position with the murder, and because he was acquitted of all the murder charges. So that's my thought process.

(N.T., 9/18/2020, at 12:22-15:1.)   Trial counsel expanded on his thought process as follows:

Well, obviously having tried cases for as many years as I have, you know, the defense in this case -- whenever there's a retrial, all the points that we may have raised in the cross examination and the theories are now exposed and the Commonwealth obviously has a chance at a retrial to either rectify some of the mistakes, to address our theories in a different way, prepare the witnesses to do a better job on cross examination, knowing what the cross examination is, you know. So the Commonwealth, I think, would have an extreme

advantage going into a retrial knowing all our theories, all our cross examination, and all the different things that we have done in the trial and be prepared to address them in a better way. That's not good for us. And again, we were in a good position at that point in time and I didn't want to put the Commonwealth in a situation where at another trial they could be in a better position at that point in the trial, so I just thought strategically -- we were ahead in my mind, and I just didn't want to give them a chance to put us in a different position.

(Id. at 27:8-28:7.) The court cannot find fault with Trial Counsel's logic. Thus, Trial Counsel clearly had a reasonable basis for not moving for a mistrial. For all of the above reasons, Defendant's first claim is without merit and does not entitle him to relief under the PCRA.

---

[12] The court knew that Co-Defendant's statement, from there, suggested that a bouncer gave a gun to Defendant right before Defendant left the Puerto Rican Club and the killing of Yolanda Morales occurred. Knowing that Detective Martinez had just mistakenly referred to Defendant by name, the court made a spontaneous decision to preclude the Commonwealth from using the remainder of Co-Defendant's statement about the gun, as it would have placed a gun in Defendant's hand before he even left the club.
[13] Defendant did not object to that portion of Co-Defendant's statement being read into evidence.

PCRA Court Opinion, filed 6/1/21, at 8-16. (italics for emphasis and some brackets in original).

Mindful of our deferential standard of review of a PCRA court's credibility determinations and following our review of the record, the parties' briefs, and the relevant caselaw, we find the PCRA court's rejection of this claim was not erroneous or an abuse of discretion.

- 14 -

As stated *supra*, in order to obtain relief on his ineffectiveness claims, Appellant must establish he was prejudiced; that is, he must demonstrate "there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127-28 (Pa. 2011). A failure to establish prejudice alone requires us to reject Appellant's claim. **Commonwealth v. Webb**, 236 A.3d 1170, 1176 (Pa.Super. 2020).

Following Detective Martinez's brief mention of Appellant's name, the trial court twice instructed the jury to disregard the detective's testimony and prevented any further questioning in this regard. We observe, as did the PCRA court, that jurors are presumed to follow the trial court's instructions. **Commonwealth v. Tyson,** 119 A.3d 353, 360 (Pa.Super. 2015), *appeal denied,* 128 A.3d 220 (Pa. 2015).

Moreover, as he explained at the PCRA hearing, trial counsel made a tactical decision not to move for a mistrial. In fact, counsel testified that he believed he would have been ineffective had he done so given the minor nature of the **Bruton** violation and the positive posture his client was in that that juncture in the trial. N.T. PCRA hearing 9/18/20, at 21-25.

Specifically, counsel stated: "The totality of it is clear. It is crystal clear to me that, A, I didn't want a mistrial; B, it was minor; C, the judge gave instructions that clearly took care of it." **Id**. at 24. In fact, Appellant did not want a mistrial, as he "knew we were doing well" and he "thought we were

- 15 -

winning." *Id*. at 26. Counsel's belief that a mistrial would not have been in Appellant's best interest is substantiated by the fact that Appellant was found not guilty of the most serious charges brought against him including murder. *Id*. at 23.

Our Supreme Court has held that where, as herein, trial counsel's tactical decision to allow a case to go to the jury instead of moving for a mistrial was reasonable where counsel believed it was in the best interests of Appellant. *Commonwealth v. Ogrod*, 839 A.2d 294, 325 (Pa. 2003). The PCRA court found trial counsel's testimony to be credible and could find no fault with counsel's reasoning.[3] Thus, in light of the foregoing, we find no merit to Appellant's first claim.

Appellant next argues the PCRA court erred when it found appellate counsel had not been ineffective for failing to preserve in an appellate brief on direct appeal the denial of a mistrial due to prosecutorial misconduct in the Commonwealth's closing argument. Before we consider the merits of this

---

[3] Although Appellant posits that trial counsel cannot to be deemed credible because he argued an issue related to a mistrial in his concise statement of errors complained of on direct appeal, *see* Appellant's Brief at 27-28, counsel testified he prepared that document without the benefit of the notes of testimony and wanted to ensure he protected the record for appeal. He stressed the trial had been long, having lasted several weeks, and he was "trying not to miss anything" or "make a mistake" when he prepared that concise statement N.T. PCRA Hearing, 9/18/20, at 21-25. As counsel explained: "If my recollection was wrong, I want to cover it. Sometimes you realize when you get the transcript your assessment was incorrect, but to err on the side of putting more in and not less in." *Id*. at 34.

claim, we must determine whether it has been properly preserved for appellate review, for a comparison of both Appellant's concise statement and his appellate brief evinces that Appellant develops a theory on appeal regarding prosecutorial misconduct that differs from that which he raised before the trial court.

In his Statement of Matters Complained of on Appeal, Appellant focused primarily upon allegations in support of his contention that "[t]he trial court erred in finding that trial counsel had a reasonable basis for not making a Motion for a Mistrial following an undisputed Bruton violation. . . ." **See** Statement of Matters Complained of on Appeal, filed 7/26/21, at ¶¶ 1-7. Appellant concludes his concise statement with the following claims:

> 8. The trial court erred by denying [Appellant's] request for a mistrial for prosecutorial misconduct during closing.
>
> 9. Having induced prejudicial testimony in its case in chief, the District Attorney again tried to "ring the bell" in its closing to emphasize prohibitec [sic] and prejudicial testimony.
>
> 10. As aforesaid, any cautionary instruction by the tria[l] court was insufficient to cure the defect in the record from the Bruton violation during the trial.
>
> 11. The conduct of the Commonwealth at closing argument renewed and refreshed the proscribed testimony in the minds of the jury minutes/hours before they were given the case to begin deliberations.

**Id**. at ¶¶ 8-11.

It is evident that Appellant did not specifically allege in his concise statement that Appellate counsel had been ineffective for failing to preserve

on direct appeal the issue of whether the trial court erred in failing to grant a mistrial due to prosecutorial misconduct in the closing argument. In fact, Appellant made no allegations of ineffective assistance of counsel in his concise statement at all.[4] It is the new theory of appellate counsel's ineffectiveness that Appellant presents in the second question presented in his appellate brief.

It is well-settled that issues not included in a court-ordered concise statement are deemed waived on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); ***see Commonwealth v. Gordon***, 528 A.2d 631, 638 (Pa.Super. 1987), *appeal denied*, 517 Pa. 621 (1988) (reiterating that "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief.")).

Our Supreme Court and this Court consistently have ruled that where the trial court directs a defendant to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), any issues not raised in that statement shall be waived. ***See supra***; ***see also Commonwealth v. Bullock***, 948 A.2d 818, 823 (Pa.Super. 2008) (citing ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998)); ***Commonwealth v. Oliver***, 946 A.2d

---

[4] It is noteworthy that Appellant's allegation of trial court error in not granting Appellant a mistrial following Detective Martinez's trial testimony was raised by Appellant and found to be waived on direct appeal. ***See*** *supra*.

1111, 1115 (Pa.Super. 2008) (noting that **Lord** "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement"). In **Commonwealth v. Castillo**, 888 A.2d 771, 775 (Pa. 2005), our Supreme Court explained that mandatory waiver of all claims that do not strictly adhere to Rule 1925(b)'s requirements "provides litigants with clear rules regarding what is necessary for compliance and certainty of result for failure to comply." **See id.** at 779-80.

Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues the parties plan to raise on appeal. The absence of a trial court opinion addressing a particular claim poses a substantial impediment to meaningful and effective appellate review. **Commonwealth v. Lemon**, 804 A.2d 34, 36 (Pa.Super. 2002). Thus, Rule 1925 is a crucial component of the appellate process. **Id.** at 37. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa.Super. 2001).

Furthermore, claims that are not raised before the trial court are waived. **See Commonwealth v. Lopata**, 754 A.2d 685, 689 (Pa.Super. 2000) (stating that "[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal."). Moreover, "[e]ven if the trial court correctly guesses the issues [an] [a]ppellant raises on appeal and writes an opinion pursuant to that supposition the issue is still waived." **Commonwealth v. Heggins**, 809 A.2d 908, 911 (Pa.Super. 2002).

Importantly, our Supreme Court has held that an ineffective assistance of counsel claim is distinct from an underlying claim of trial court error. *See Commonwealth v. Collins*, 888 A.2d 564, 572 (Pa. 2005).

In light of the foregoing, because Appellant did not raise the issue of appellate counsel's alleged ineffectiveness in his Statement of Matters Complained of on Appeal, he has failed to preserve it for our review. Accordingly, despite the fact that the PCRA court found Appellant's second issue lacks merit, because Appellant develops an argument in support of a newly raised theory in his appellate brief, it is waived.[5]

_____

[5] Notwithstanding, even if we were to deem this issue to be properly preserved for appellate review, as the PCRA court found, Appellant was not prejudiced by Appellate counsel's briefing errors on direct appeal. It is true that when, during closing argument, the prosecutor briefly discussed that portion of Appellant's Co-Defendant's statement made to police regarding a gun having been shown to Appellant by a bouncer, he did so in contravention of the principle that "a closing argument must be based upon evidence in the record or reasonable inferences therefrom." *Commonwealth v. Culver*, 51 A.3d 866, 878 (Pa.Super. 2012). However, as the PCRA court held, a mistrial due to any prosecutorial misconduct was not warranted in light of the fact that any prejudice to Appellant was cured by its instruction, which the jury is assumed to have followed, and this reference, when the closing argument is viewed as a whole, was harmless:

> In this case, the isolated commentary in the prosecutor's closing argument on a matter outside the evidentiary record did not prejudice the jury or form in their minds a fixed bias or hostility towards [Appellant] such that they could not objectively weigh the evidence and render a true and fair verdict. First, the court clearly instructed the jury, both in its instructions at the beginning of the case and prior to closing arguments, that the arguments made by counsel are not evidence. (*See* N.T., 10/8/2014, at 12:22-13:2; N.T., 10/30/2074, at 4:2-24.) Second,

*(Footnote Continued Next Page)*

the court took swift, deliberate, and forceful action in response to the Commonwealth's improper argument when it instructed the jury, in its final instructions, that

> [t]he Commonwealth introduced evidence in this case of a statement that it claims [Co-Defendant] gave to the police, and at the time that evidence was offered I told you that the statement could only be used in the case against [Co-Defendant] and not in the case against [Appellant]. Based upon certain arguments about [Co-Defendant's] statement that the Commonwealth made during the closing argument, I have now ruled as a matter of law that you may not consider any portion of [Co-Defendant's] statement, as I have stricken it from the record. Therefore, you may not consider any portion of [Co-Defendant's] statement to the police in any way or for any purpose in your deliberations in either case against either defendant.

(N.T., 10/31/2014, at 47:16-48:8.) In delivering this instruction, the court removed any prejudice that arose from the prosecutor's improper closing argument by cautioning the jury and highlighting the improper argument as the reason for the court's curative action. By completely severing Co-Defendant's statement to police from the rest of the evidentiary record, the court made it less likely that the jury would consider the portions of the statement, that were properly in evidence, in a tainted and improper manner because of the Bruton violation that was compounded by the improper closing argument. Instead, the court's instruction mandated that the jury skip over Co-Defendant's statement entirely, including the *Bruton* violation and the improper mention of the statement in the prosecutor's closing argument, in its deliberations. The court is confident that the jury did just that because, as stated above,"[a] jury is presumed to follow a trial court's instructions." *Reid*, 99 A.3d at 501. Lastly, in the event that, notwithstanding the full range of curative and cautionary instructions delivered by the court, the prosecutor's closing argument produced some level of error that clung to the jury and followed it into the deliberation room, any such error was harmless in light of the fact that [Appellant's] counsel conceded moments earlier, in his own closing argument, that [Appellant] handled and

*(Footnote Continued Next Page)*

Order affirmed.[6]

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022

_____

fired a gun during the incident,[16] the *de minimis* nature of any prejudice created, and the overwhelming independent evidence of [Appellant's] guilt. *See Commonwealth v. Molina*, 104 A.3d 430, 453-54 (Pa. 2014). For all of these reasons, even if this issue had arguable merit and Appellate Counsel had no reasonable basis for failing to brief it properly, [Appellant] suffered no prejudice.

_____
[16] (N.T., 10/30/2014, at 84:6-85:22.)

PCRA Court Opinion, filed 6/1/21, at 20-22.

[6] "This Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis." **Commonwealth v. Williams**, 73 A.3d 609, 617 n. 4 (Pa.Super. 2013).