**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
EDGAR EUGENE STATLER :
:
Appellant : No. 52 MDA 2022

Appeal from the Judgment of Sentence Entered December 15, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002361-2018


BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: JULY 26, 2022**

Appellant, Edgar Eugene Statler, appeals from the judgment of sentence of 11½-23 months' incarceration, imposed after he was convicted of manufacturing marijuana.[1] A jury convicted Appellant of this offense at his second trial, after his first trial resulted in a hung jury. Herein, Appellant challenges the trial court's denying his motion to bar reprosecution on double jeopardy grounds. After careful review, we affirm.

A full recitation of the facts adduced at Appellant's trials is not necessary to the resolution of his claim in this appeal. Briefly, as summarized by Appellant, his

> home was searched by the Franklin County Sheriff's Department on February 21, 2018[,] while the Sheriff's Department was looking to serve outstanding warrants on Lenne Larue. Appellant permitted his residence to be searched by [d]eputies from the

---

[1] 35 P.S. § 780-113(a)(30).

> Sheriff's Department. During th[e] search[], an alleged marijuana grow operation was discovered in the basement. Lenne Larue was not found.

Appellant's Brief at 9 (citations omitted).

As a result of this discovery, the Commonwealth ultimately charged Appellant with one count of manufacturing marijuana. However, "[i]n the intervening period, Appellant met with Detective [John] Brady [of the Franklin County Drug Task Force] to discuss his cooperation with the Task Force. Detective Brady took notes during these meetings, which included an alleged confession by Appellant." *Id.* at 9-10 (citation omitted). At trial, Assistant District Attorney (ADA) Steven

> Sess informed defense counsel and the [trial c]ourt that he was made aware of the interview and existence of the notes on the day of trial. ADA Sess indicated that he did not intend on using this information at trial and, thus, ADA Sess did not provide them to [Assistant Public Defender (APD) Christopher] Mosebrook on the day of trial. ADA Sess indicated to the [c]ourt that he ultimately decided to attempt to present this information "after [Appellant] opened the door by [APD Mosebrook's] asking multiple questions about [Appellant]'s participation with the Franklin County Drug Task Force and claiming his … ultimate non-participation with the Task Force indicated [that] he had no useful information."
>
> Ultimately, a mistrial was declared after the [j]ury was unable to reach a unanimous verdict. Following this, the Commonwealth indicated [its intent] to re-try [Appellant] and [retrial was] scheduled for … October 16, 2020. On October 8, 2020, [Appellant] filed [a] Motion to Bar Reprosecution. On October 12, 2020, the Commonwealth filed an [an answer, and o]n January 8, 2021, a hearing on [Appellant]'s [m]otion was held.

Trial Court Opinion (TCO), 1/22/21, at 2.

By order and opinion dated January 22, 2021, the trial court denied Appellant's motion to bar his second trial. The second trial was held on November 1, 2021, after which the jury found Appellant guilty of manufacturing marijuana. On December 15, 2021, the court sentenced Appellant to 11½-23 months' incarceration.

Appellant filed a timely notice of appeal. He then filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on January 14, 2022. The trial court issued its Rule 1925(a) opinion on January 27, 2022, which fully incorporated its January 22, 2021 opinion. Appellant now presents one issue for our review, which is whether the trial court erred in denying his motion to bar retrial on double jeopardy grounds due to prosecutorial misconduct during his first trial. Appellant's Brief at 8.

"An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary." *Commonwealth v. Culver*, 51 A.3d 866, 882 (Pa. Super. 2012). We begin with a discussion of the evolving standards in Pennsylvania governing double jeopardy claims premised upon prosecutorial misconduct.

"Before September 1992, Pennsylvania's double jeopardy protections had been viewed as coextensive with those of the Fifth Amendment...." *Commonwealth v. Johnson*, 231 A.3d 807, 819 (Pa. 2020). "Insofar as individual rights are concerned," the Double Jeopardy Clause of the Fifth

Amendment[2] "protects a defendant's interest in having his fate decided by his first jury." *Id.* However, the Double Jeopardy Clause does not preclude retrial just because prosecutorial misconduct occurred; rather, the general rule is that "retrial is … allowed where the first proceeding ends in a mistrial…." *Id.*

An exception to the general rule permitting retrial was recognized for prosecutorial overreach. The Double Jeopardy Clause barred retrial where there was prosecutorial "misconduct intended to provoke a defense motion for a mistrial or actions otherwise taken in bad faith to harass or unfairly prejudice the defendant." *Id.* at 820 (citing *Lee v. United States*, 432 U.S. 23, 34 (1977)). This standard was subsequently constricted in *Oregon v. Kennedy*, 456 U.S. 667 (1982). The *Kennedy* Court limited the Double Jeopardy Clause's bar of retrial due to prosecutorial misconduct to instances "where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial…." *Kennedy*, 456 U.S. at 676. The *Kennedy* standard continues to govern claims in federal courts.

In Pennsylvania, *Kennedy* only provides the floor of double jeopardy protections premised on prosecutorial misconduct. In *Commonwealth v. Smith*, 615 A.2d 321 (1992), the Pennsylvania Supreme Court "construed Pennsylvania's double[ ]jeopardy provision as supplying broader protections

_____

[2] The Fifth Amendment to the federal constitution provides, in pertinent part, that "No person shall … be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V.

than its federal counterpart as construed in *Kennedy*." *Johnson*, 231 A.3d at 821. Specifically, in *Smith*, our Supreme Court held that

> the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Smith*, 615 A.2d at 325.

Later, in *Johnson*, the Pennsylvania Supreme Court further expanded these protections in Pennsylvania, ruling that,

> [u]nder Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in *Smith*, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

*Johnson*, 231 A.3d at 826.

Synthesizing these authorities, the double jeopardy protections of the Pennsylvania Constitution prohibit retrial of a defendant where a prosecutor's misconduct 1) was intended to goad the defendant into requesting a mistrial, 2) was intended to deny the defendant of his right to a fair trial, and/or 3) consciously disregarded a substantial risk to the defendant's right to a fair trial.

Here, Appellant argues that ADA Sess' withholding of evidence of Appellant's inculpatory statements to Detective Brady was a violation of the

discovery rules,[3] and that it constituted intentional misconduct that deprived Appellant of his right to a fair trial. He contends that the prosecutor effectively admitted that the misconduct was intentional, as the prosecutor specifically averred that he had withheld the evidence because he did not intend to introduce it at trial. Appellant's Brief at 17-18 (citing Commonwealth's Answer to Appellant's Motion to Bar Retrial, 10/12/20, at 3). He further argues that barring retrial was warranted under the circumstances of this case because:

> The intentional withholding of a confession denies a defendant the right to a fair trial because it denies them the right to decide whether they want to go to trial at all. To have a confession sprung upon a defendant in the midst of a trial is unduly prejudicial to any defense presented thus far without the ability to prepare.

*Id.* at 18. Furthermore, Appellant attempts to distinguish the facts of this case from those involved in **Burke**, arguing that "**Burke**'s holding was predicated on the fact there was no bad faith overreaching seeking to deprive the defendant of a fair trial, whereas this case involved admittedly intentional[] actions which could only be designed to deprive Appellant of a fair trial." *Id.*

The trial court concluded that Appellant "failed to show that [the prosecutor] engaged in conduct intentionally undertaken to prejudice [Appellant] to the point of the denial of a fair trial." TCO at 8. The court

---

[3] Pa.R.Crim.P. 573(B)(1)(b) requires mandatory disclosure, "on request by the defendant," of "any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth[.]"

began its analysis by recognizing that it was "undisputed that the Commonwealth suppressed" the notes from Detective Brady that included Appellant's inculpatory statements. *Id.* at 6. Nevertheless, the court then determined that the prosecutor's misconduct had not violated the rule established in *Brady v. Maryland*, 373 U.S. 83 (1963).

> In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87[.] The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 [(1976),] and the obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution, *Kyles v. Whitley*, 514 U.S. 419 … (1995). Furthermore, under *Brady*, the evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. … Lambert*, … 884 A.2d 848, 854 ([Pa.] 2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 … (1999)).

*Commonwealth v. Puksar*, 951 A.2d 267, 281 (Pa. 2008).

In his Motion to Bar Reprosecution, Appellant's allegation of prosecutorial misconduct underlying his double jeopardy claim was exclusively raised in terms of a *Brady* violation. Appellant's Motion to Bar Reprosecution, 10/8/20, at 2-3. The trial court determined that the prosecutor's failure to disclose Detective Brady's notes did not violate *Brady* because the notes were inculpatory, not exculpatory, and therefore not favorable to Appellant. TCO at 6; *see also Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011) ("*Brady* does not require the disclosure of information 'that is not exculpatory

but might merely form the groundwork for possible arguments or defenses.'") (citation omitted). We agree with the trial court that ADA Sess' failure to disclose Appellant's inculpatory statements to Detective Brady did not violate ***Brady***.[4]

The trial court then turned to Appellant's argument that ADA Sess engaged in misconduct by violating the discovery rules, which was not explicitly raised in Appellant's Motion to Bar Reprosecution. At the hearing on Appellant's motion, Appellant "made reference to Pa.R.Crim.P. 573(B)(1)[]...." TCO at 7. Relying on ***Commonwealth v. Collins***, 957 A.2d 237 (Pa. 2008), the trial court determined that ADA Sess' withholding of Detective Brady's

_____

[4] The court alternatively determined that ADA Sess did not violate ***Brady*** because "the content of the interview notes could have been readily obtained by [Appellant] because [Appellant] was the subject of the interview and, therefore, he knew about the information." TCO at 6 (citing ***Commonwealth v. Pursell***, 724 A.2d 293, 305 (Pa. 1999) ("The Commonwealth does not violate the ***Brady*** rule when it fails to turn over evidence readily obtainable by, **and** known to, the defendant.") (emphasis added)).

We disagree with the court's alternative analysis. The notes were not 'readily obtainable' by Appellant when they were held in the exclusive possession of the Commonwealth until their untimely disclosure to the defense. The trial court's conclusion that Appellant had "equal access" to Detective Brady's notes, TCO at 7, is simply belied by the face of the record. This limited exception to the ***Brady*** rule did not apply, regardless of whether Appellant was aware of his participation in the interview, and regardless of whether he told his attorney about the interview, particularly since Appellant disputes the factual premise that he had confessed to Detective Brady.

Nevertheless, ***Brady*** does not apply to inculpatory statements, ***see Paddy***, ***supra***, and Appellant no longer maintains that ADA Sess' misconduct violated ***Brady*** on appeal. Thus, the trial court's misapplication of the ***Brady*** exception does not affect our decision today.

- 8 -

notes did not violate Rule 573. In **Collins**, our Supreme Court noted that, when the withheld evidence "is exclusively in the custody of police, possession is not attributed to the Commonwealth for purposes of Rule 573." **Collins**, 957 A.2d at 253 (distinguishing violations of **Brady**, for which there is no distinction made between the prosecutor and the police with regard to evidence held by the government). The trial court reasoned that, here, ADA Sess "was not aware of the existence of the interview notes until the morning of trial [and], therefore, [he] did not possess it" for purposes of Rule 573(B)(1). TCO at 7-8.

We disagree with the trial court's analysis under Rule 573. While it is true that the prosecutor was not in possession of Detective Brady's notes until the first day of trial, ADA Sess admitted that he did not immediately disclose that evidence once he became aware of it, and the obligation to disclose evidence covered by Rule 573(B)(1)(b) does not cease on the day of trial. Rule 573(D) provides for a continuing duty to disclose, stating that:

> If, prior to **or during trial**, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, **such party shall promptly notify the opposing party or the court of the additional evidence**, material, or witness.

Pa.R.Crim.P. 573(D) (emphasis added).

Here, ADA Sess did not "promptly notify" Appellant or the trial court when he first learned of the inculpatory statements referenced in Detective Brady's notes, as required by Rule 573(D). Instead, ADA Sess intentionally

withheld that evidence, despite the fact that it was subject to mandatory discovery pursuant to Rule 573(B)(1)(b), under the false belief that disclosure was not required if he did not intend to use that evidence in the Commonwealth's case-in-chief. Thus, the trial court's conclusion that the Commonwealth did not violate Rule 573 runs afoul of the text of the rule and is belied by the record. To the contrary, ADA Sess engaged in prosecutorial misconduct by failing to disclose evidence of inculpatory statements made by Appellant, in violation of Rule 573(B)(1)(b) and (D).

Although we disagree with the trial court's analysis as to whether prosecutorial misconduct occurred, that does not end our inquiry. As recognized in **Burke**, "a mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges" in all cases, and "where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal." **Burke**, 781 A.2d 1136, 1145-46. Here, relying on **Burke**, the trial court determined there was "absolutely no evidence of record to support a finding that ADA Sess acted in bad faith or with the specific intent to deny [Appellant] of a fair trial." TCO at 5. We agree. Although we conclude that ADA Sess engaged in prosecutorial misconduct by intentionally violating his obligation under Rule 573, we ascertain no error on the part of the trial court in its ultimate conclusion that Appellant failed to meet his burden of proving that ADA Sess intended to

- 10 -

deprive Appellant of a fair trial by engaging in that misconduct. Further, we ascertain insufficient evidence of record suggesting that the prosecutor's conduct was so reckless that it warranted the most extreme remedy of barring retrial. *See Johnson*, *supra*.

As to the intentionality of the prosecutor's conduct, by his own admission, ADA Sess received Detective Brady's notes on the day of trial, specifically deliberated on whether to disclose them to the defense with other members of his office, and then ultimately chose not to disclose them based on the mistaken legal judgment that nondisclosure was justified if he did not intend to use that evidence in his case-in-chief. *See* N.T. Motion Hearing at 14. Although the prosecutor's admission clearly demonstrates intentional misconduct, it does not implicitly suggest conduct intended to deprive Appellant of a fair trial. It is only clear evidence of misconduct that was driven by a mistaken belief as to a legal duty to disclose. A showing of bad faith requires something more than a mistaken belief as to the law. Here, we agree with the trial court that there was no evidence of bad faith beyond mere conjecture.

To the contrary, the record tends to discount a bad faith motive for the misconduct. ADA Sess withheld inculpatory evidence, not exculpatory evidence. It is hard to fathom why a prosecutor, acting in bad faith, would choose to withhold inculpatory evidence such as a confession, rather than seek lawful admission of that evidence in the Commonwealth's case-in-chief, merely for the uncertain possibility of using that evidence for surprise value

in the off chance that defense counsel's cross-examination will open the door to its introduction. Indeed, ADA Sess' strategy at the second trial included presentation of Appellant's inculpatory statements in the Commonwealth's case-in-chief. *See* N.T. Second Trial, 11/1/21, at 13 (stating, during the Commonwealth's opening argument, that the jury could find Appellant guilty of manufacturing marijuana based solely on his inculpatory statements to Detective Brady). While it is implausible that the prosecutor acted in bad faith in these circumstances, it is not impossible. Nevertheless, here, Appellant points to no evidence beyond ADA Sess' admissions to suggest bad faith of that sort, and we ascertain no error in the trial court's concluding that ADA Sess' admission did not suggest such a motive by itself. Consequently, we ascertain no abuse of discretion in the trial court's holding that Appellant failed to meet his burden to demonstrate that ADA Sess possessed a bad faith motive to deprive Appellant of a fair trial when he intentionally withheld evidence of Appellant's alleged confession to Detective Brady.

We also find Appellant's attempt to distinguish **Burke** unconvincing. In that case, Burke was accused of participating in a fake robbery scheme with a coworker, Graham. **Burke**, 781 A.2d at 1137. Prior to trial, the prosecutor failed to provide a statement made to police by Graham, which the trial court had construed as exculpatory with respect to Burke. **Id.** at 1138-40. Indeed, the **Burke** Court ultimately presumed that the withheld statement was material under **Brady**. **Id.** at 1143. The trial court in **Burke** granted a motion to dismiss the prosecution based on prosecutorial misconduct, reasoning that

it was the only appropriate remedy given the prosecutor's gross negligence in failing to uphold her duty to disclose under both ***Brady*** and the discovery rules. ***Id.*** at 1139-40. On appeal, this Court found that the remedy was too drastic, and that the prosecutor's failure to disclose warranted no more than a continuance as a remedy. ***Id.*** at 1140.

Our Supreme Court rejected the approach of the trial court, finding the trial judge had erroneously "approached the question generically, viewing the non-disclosure as of a type that was necessarily prejudicial, without evaluating the actual evidence and assessing what effect it may have had on the outcome of the trial." ***Id.*** at 1143. The Court found that the negligence of the prosecutor fell far short of the "deliberate, **bad faith** prosecutorial misconduct which warranted dismissal" in other cases. ***Id.*** at 1145 (emphasis added). Furthermore, the ***Burke*** Court also found that the prosecutor's "explainable misunderstanding of her ***Brady*** obligation militate[d] against the view that she deliberately failed to pursue and locate evidence known only to the police in an effort to provoke [Burke] into seeking a mistrial or to deprive [him] of a fair trial." ***Id.*** Thus, the ***Burke*** Court agreed with the Superior Court's reversing the trial court's order and remanded for a new trial. ***Id.*** at 1146.

Appellant contends that ***Burke*** is distinguishable because there was intentional misconduct in that case. ***See*** Appellant's Brief at 18. However, he omits the ***Burke*** Court's further qualifier that there was no "deliberate, **bad faith**" misconduct conduct in that case. ***Burke***, 781 A.2d at 1145 (emphasis added). Moreover, as here, the ***Burke*** Court indicated that the

- 13 -

prosecutor's mistake of law regarding **Brady** obligations militated against a finding of bad faith. **Id.** As there is no evidence of bad faith on the part of the prosecutor, we disagree with Appellant that **Burke** is distinguishable to the extent that it suggests barring retrial is warranted in the circumstances of this case.

Finally, we consider our Supreme Court's ruling in **Johnson**, as that case dictates that prosecutorial misconduct, although not intentional, may also warrant barring retrial when the misconduct is so reckless that there is a substantial risk that a defendant will be deprived of a fair trial. Here, defense counsel was unlikely to have pursued the specific line of questioning of Detective Brady had he known that Appellant had made inculpatory statements to Detective Brady during those discussions. However, that appears to be the extent of the actual prejudice suffered by Appellant due to ADA Sess' misconduct. We do recognize that, generally speaking, knowledge of such inculpatory statements might conceivably affect pretrial deliberations regarding whether to go to trial or to pursue a plea agreement with the Commonwealth.[5] Nevertheless, the prejudice of these consequences was

---

[5] Appellant argues that he was denied the right to decide whether he wanted to go to trial at all, implying that he may have sought to plead guilty, or negotiate such a plea, had he known about the inculpatory evidence. However, Appellant's first trial ended in a mistrial due to a hung jury. Thus, Appellant had the opportunity to attempt to negotiate a plea to avoid his second trial, or to plead guilty without a plea agreement, yet he provides no argument or discussion as to why he did not seek a plea at that time, nor any discussion regarding whether the Commonwealth had ever offered a plea
*(Footnote Continued Next Page)*

largely theoretical and/or cured by a second trial, where Appellant's inculpatory statements to Detective Brady were no longer unanticipated, and where Appellant again had the opportunity to explore the possibility of obtaining a favorable plea agreement. Appellant pursued essentially the same general legal strategy at his second trial, again attempting to construe himself as an "innocent bystander" to Lenne LaRue's marijuana operation. N.T. Second Trial, 11/1/21, at 16. Thus, it does not appear that the risk of denying Appellant a fair trial was significant in terms of its effect on Appellant's trial strategy, and Appellant's suggestion that his decision on whether to go to trial was affected is purely theoretical in the circumstances of this case.

In **Johnson**, by contrast, "the common pleas court saliently found that the experienced prosecuting attorney made 'almost unimaginable' mistakes, which 'dovetailed' with other serious errors by law-enforcement officers and other police personnel such as the DNA lab technician." **Johnson**, 231 A.3d at 826 (citations omitted). In that case, the victim was killed in a shooting in 2002, and the case remained unsolved for several years. **Id.** 810-11. A key piece of evidence that eventually tied Johnson to the crime was a red cap found near the crime scene with Johnson's DNA on it. **Id.** at 811-12. A black cap with a bullet hole in it, which contained the victim's DNA, was also

---

agreement. It seems unlikely, then, that prompt disclosure at the outset of Appellant's first trial would have affected Appellant's decision to maintain his innocence and fight the charges at trial. As was the case in **Burke**, the prejudice suffered by Appellant in this regard was purely theoretical.

- 15 -

recovered at the scene. However, the prosecutor in **Johnson** had overlooked obvious discrepancies in the collection of these pieces of evidence:

> Of particular note, the Commonwealth misunderstood its own evidence and conflated the findings relating to the red and black caps. Although separate property receipt numbers had been assigned to the two hats, this did not prompt the Commonwealth to investigate whether its trial witnesses were discussing two distinct caps – or, alternatively, why a single red cap was associated with multiple property receipts. Even the Commonwealth's forensic scientists who authored, or supervised generation of, the scientific reports did not realize at trial that there were two caps involved.

**Id.** at 813–14.

Due to the conflation of the red and black cap evidence, "the prosecuting attorney repeatedly indicated in his opening statement that" Johnson had shot the victim "essentially at point blank range[,] … thus accounting for [the victim's] blood supposedly being on the underside of the red cap's brim." **Id**. at 812. That evidence was critical at trial, undermining the defense's argument that nobody had identified Johnson as the shooter; the prosecutor specifically argued to the jury that the presence of both Johnson's and the victim's DNA on the same hat indicated that they were right next to each other when the victim was shot. **Id.** The jury was convinced. Johnson was convicted of first-degree murder and sentenced to death. **Id.** at 813. The Commonwealth's errors were not discovered until years later, during the litigation of Johnsons' Post Conviction Relief Act petition. **Id.** at 813-14.

In ruling that the Commonwealth was barred from retrying Johnson, our Supreme Court emphasized that

> [a]lthough the record … supports the common pleas court's ultimate finding that these acts and omissions were not made intentionally or with a specific purpose to deprive [Johnson] of his rights, the record is likewise consistent with that tribunal's characterization that such mistakes were "unimaginable." Although "unimaginable" is not a traditional *mens rea* descriptor, it is, together with all of the circumstances on which it was based, strongly suggestive of a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial. There is little dispute that those consequences include 'prejudice [to] the defendant to the point of the denial of a fair trial.'

*Id.* at 827–28 (citation and footnote omitted).

We are simply unconvinced that the prosecutor's misconduct here carried the same potential risk of denying Appellant a fair trial that was at issue in **Johnson**. The prosecutor's errors in **Johnson** resulted in the jury's being presented with compelling-yet-false scientific evidence of Johnson's guilt in a capital case. Here, the prosecutor withheld **inculpatory** evidence based upon a mistake of law in a simple case involving a small-scale marijuana operation, where the value of the at-issue evidence would ultimately turn on the credibility of Detective Brady and Appellant. Even if ADA Sess' mistake warranted a new trial for Appellant (a question we need not answer as Appellant ultimately received, albeit for other reasons, a new trial), we do not view ADA Sess' misconduct to be of the same gravity as the consequences of the prosecutor's errors in **Johnson**.

In conclusion, we ascertain no error in the trial court's concluding that Appellant's second trial should not be barred on double jeopardy grounds.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/26/2022